IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARK VEGA and<br>MARK ANTHONY VEGA, | § § § | MDL NO. 2543<br>1:14-MD-2543-JMF |
| *Plaintiffs*, | § § | HON. JESSE M. FURMAN |
| v. | § § | CIVIL ACTION NO. |
| GENERAL MOTORS, LLC, | § § | COMPLAINT |
| *Defendant.* | § § | JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COME NOW Plaintiffs, Mark Vega and Mark Anthony (hereinafter the "Named Plaintiffs" or "Plaintiffs"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1.     The Named Plaintiffs' causes of action are brought solely against GENERAL MOTORS, LLC ("New GM").  The Named Plaintiffs do not assert any causes of action against General Motors Corporation ("Old GM").

2.     Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same.  Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage.  New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein,

via the mind of the employees, officers, managers, books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG). Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM. Further, as identified therein, the Plaintiffs have claims for crashes involving Old and/or New GM vehicles ("GM vehicles") that caused personal injury, loss of life, or property damage and New GM is, therefore, liable to the Named Plaintiffs.

**PARTIES**

3. Plaintiff Mark Vega is, and was at all times relevant hereto, a resident of Midland, Texas.

4. Plaintiff Mark Anthony Vega is, and was at all times relevant hereto, a resident of Houston, Texas.

5. Plaintiffs assert claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on December 31, 2014, involving a 2000 Chevrolet Silverado (VIN 1GCEC19T4YZ130659). A recall was issued for 2000 Chevrolet Silverados related to the failure of the driver and passenger air bags to deploy as designed (Manufacturer Recall Number: N020029). This recall was announced prior to the date Plaintiff Mark Anthony Vega purchased the vehicle and is listed as INCOMPLETE according to https://vinrcl.safercar.gov/vin/vinlookup.

6. The Named Plaintiffs' personal injury claim involves a Defective Vehicle, specifically a 2000 Chevrolet Silverado. Defendant New GM is a Delaware limited liability company. On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. New

GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under

Chapter 11 of the Bankruptcy Code on June 1, 2009.  Pursuant to the Agreement and other orders

of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if

not most, of Old GM's employees including, on information and belief, most of the same senior-

level management, officers, and directors.  New GM also acquired Old GM's designs, tools,

inventory, books, records, and its key contracts, among other essential assets.

7.      Under the Purchase Agreement, New GM assumed liability for crashes after the

closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss

of life, or property damages.

8.      New GM also assumed product liabilities of Old GM, including certain statutory

requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the
> certification, reporting and recall requirements of the National Traffic and Motor
> Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and Safety Code and
> similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle
> parts manufactured or distributed by Seller [Old GM].

9.      In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the
> administration, management and payment of all Liabilities arising under (i) express
> written warranties of Sellers [Old GM] that are specifically identified as warranties
> and delivered in connection with the sale of new, certified used or pre-owned
> vehicles or new or remanufactured motor vehicle parts and equipment (including
> service parts, accessories, engines and transmissions) manufactured or sold by
> Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

10.     At all times relevant to the claims in this lawsuit, Old GM and New GM were in

the business of developing, manufacturing, and marketing cars throughout the United States

generally, and specifically in the Plaintiffs' state of citizenship.  New GM has a network of

authorized retailers that sell its vehicles and parts throughout the United States.  New GM

maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

11.     This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiffs and New GM are citizens of different states.

**FACTUAL BACKGROUND**

**General Background**

12.     Plaintiff Mark Anthony Vega was driving a 2000 Chevrolet Silverado on December 31, 2014, on North State Highway 6 in Harris County, Texas, when suddenly another vehicle failed to yield the right of way to oncoming traffic and turned in front of Mr. Vega's vehicle. Plaintiff Mark Vega was a passenger in the 2000 Chevrolet Silverado. The 2000 Chevrolet Silverado struck the right side of the other vehicle and sustained frontal damage, but the airbags failed to deploy. Clearly, there was a defect in the airbags since they failed to deploy.

13.     An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.  New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

14.     Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is running, it operates safely, and its critical safety systems (such as its airbag systems and passenger

restraint systems) work properly until such time as the driver shuts down the vehicle. Moreover, a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

15.    To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with defective airbag systems and passenger restraint systems in General Motors brand vehicles.

16.    In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects. As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

17.    On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect. Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

18.    On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents". To that end, New GM acquired notice of the safety-related defects contained in Old GM's files, including numerous engineering reports, investigative reports, failure analyses, technical service bulletins, and other documentation concerning the common defects in the airbag systems/passenger restraint

systems described herein.

19.     Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

20.     The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.  Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  49 C.F.R. §576.5 to §576.6.

21.     The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident."  49 U.S.C. §30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description

of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related. 49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c). Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles. 49 C.F.R. §577.5(a), §577.7(a). Violating these notification requirements can result in a maximum civil penalty of $15,000,000. 49 U.S.C. §30165(a)(1).

22.     Defendant New GM used several processes to identify safety issues, including the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and Problem Resolution Tracking System ("PRTS"). The TREAD database, used to store the data required for the NHTSA early warning reports, was the principal database used by Old and New GM to track incidents related to Old and New GM vehicles. The database included information from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external surveys; (iv) field reports from employees who bought Old and New GM vehicles and from Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database maintained by the Old and New GM legal staff to track data concerning complaints filed in court. A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to identify spikes in the number of accidents or complaints related to various Old and New GM vehicles. The PRTS is a database that tracks engineering problems identified in testing, manufacturing, through warranty data and through customer feedback. The PRTS process involves five steps: identification of the issue, identification of the root cause, identification of a solution, implementation of the solution, and feedback.

23.     Because the same employees carried out the TREAD Act obligations at Old GM

and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they were in fact required to do so. This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

24.    In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiffs allege that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability. With respect to Plaintiffs' independent claims, Plaintiffs do not seek to hold Defendant New GM liable for the actions of Old GM. Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

25.    Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

26.    New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiffs' vehicle, including the following:

- "THE CONTACT OWNS A 2000 CHEVROLET SILVERADO. WHILE DRIVING 30 MPH HE DEPRESSED THE BRAKES AND CRASHED INTO THE VEHICLE IN FRONT OF HIM. THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER SUSTAINED A LACERATED SPLEEN AND CONTUSION OF THE HEART. A COMPLAINT WAS SUBMITTED TO THE MANUFACTURED (COMPLAINT # 71-546827970). THE CURRENT AND FAILURE MILAGES WERE 128,000." (08/10/2007)

- "AIR BAGS DID NOT DEPLOY UPON IMPACT." (07/07/2005)

- "I WAS IN A HEAD ON COLLISION AND RECEIVED A COMPOUND FRACTURE TO MY RIGHT FEMUR BONE, 2 BLACK EYES AND FRACTURED RIBS DUE TO THE INACTIVATION OF THE DRIVERS AND

PASSENGER AIRBAG MODULES, ALSO THE STEERING WHEEL BENT RESEMBLING AN AIRPLANE WHEEL. MY WIFE CHECKED THE INTERNET AFTER THE INCIDENT AND FOUND THERE WAS A RECALL FOR THE AIRBAG MODULE ON THE YEAR OF MY 2000 CHEVROLET SILVERADO TRUCK. WE WERE NEVER NOTIFIED OF THIS BEFORE THE INCIDENT, BUT ARE CURRENTLY RECEIVING UPDATES TODAY. DO NOT UNDERSTAND WHY WE WERE NEVER NOTIFIED OF THIS. THE TRUCK IS NOW IN A STORAGE YARD AND WE ARE AWAITING THE RESPONSE FROM THE INSURANCE ADJUSTOR." (05/06/2005)

- "OFF CENTER HEAD ON CRASH WITH 2 SIMILAR 2000 CHEVY SILVERADO EXTENDED CAB PICK UP TRUCKS. ESTIMATED IMPACT SPEED 90 MPH ( 60 MPH VEHICLE 2, 30 MPH VEHICLE 1 PER CHP REPORT) NO AIRBAG DEPLOYMENT OF EITHER VEHICLE." (03/19/2005)

- "WHILE DRIVING 20 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. VEHICLE WAS TOWED TO GARAGE FOR INSPECTION. THE CAUSE HAD NOT BEEN DETERMINED AT THIS TIME…" (03/08/2005)

- "AIR BAG FAILED TO DEPLOY, AFTER MINOR SIDE IMPACT. AFTER TRAVELLING 20-30 FEET AWAY FROM THE SIDE IMPACT CRASH SITE THE CONSUMER FRONTAL IMPACT CRUSHED HER VEHICLE. NEITHER THE FRONT OR THE SIDE AIRBAG DEPLOYED." (01/11/2005)

- "RECALL CAMPAIGN 02V078 00 CONCERNING AIR BAG SENSING MODULE. CONSUMER'S VEHICLE WAS INVOLVED IN A REAR END COLLISION, IT CRASHED INTO ANOTHER VEHICLE IN FRONT AT 50 MPH. UPON IMPACT, NEITHER FRONTAL AIR BAG DEPLOYED. CONSUMER SUSTAINE DINJURIES, AND WAS TRANSPORTED TO THE LOCAL HOSPITAL BY AMBULANCE. DEALER AND MANUFACTURER WERE NOTIFIED." (12/23/2004)

- "CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WHILE DRIVING 25-30 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. RECALL 02V178000 WAS ISSUED. MANUFACTURER WAS NOT WILLING TO ASSIST THE CONSUMER." (11/02/2004)

- "CONSUMER COMPLAINED ABOUT AIR BAG FAILURE. ON TWO SEPARATE OCCASIONS VEHICLE WAS INVOLVED IN A CRASH. IN FIRST CRASH VEHICLE WAS STRUCK AT THE RIGHT FENDER AREA AT 75-80 MPH AND NEITHER AIR BAG DEPLOYED. IN SECOND CRASH VEHICLE WAS STRUCK FROM THE DRIVER'S SIDE AT 50 MPH, AND NEITHER AIR BAG DEPLOYED. CONSUMER WOULD LIKE NHTSA TO

EXPLAIN THESE ISSUES." (08/07/2004)

- "WHILE DRIVING 45-55 MPH CONSUMER'S VEHICLE WAS REAR-END BY A TRACTOR TRAILER. PUSHING CONSUMER'S VEHICLE OFF ROAD AND INTO A DITCH, FRONT END FIRST. UPON IMPACT, AIR BAGS DID NOT DEPLOY. BOTH THE DRIVER AND THE PASSENGER SUSTAINED INJURIES. THE DRIVER INJURED HIS NECK, BACK, HIPS, AND PELVIS. THE PASSENGER INJURED HER RIGHT SHOUDLER, CHEST, BACK AND HIPS." (06/22/2004)

- "I REARENDED A VEHICLE THAT WAS SITTING STILL IN THE MIDDLE OF THE ROAD, I WAS TRAVELING ABOUT 40-45 MPH, AND NEITHER AIR BAG DEPLOYED. I WAS SHIFTED IN THE VEHICLE AND HAVE KNEE AND BACK PROBLEMS." (09/28/2003)

- "WHILE DRIVING AT 45MPH CONSUMER HAD A FRONT COLLISION ,AND NEITHER OF THE FRONT BAGS DEPLOYED." (07/17/2003)

- "THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING AT 40 MPH AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. DRIVER IMPACTED THE STEERING WHEEL, AND DRIVER'S SIDE SEAT BELT DIDN'T RETRACT." (06/16/2003)

- "THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND THE AIR BAGS FAILED TO DEPLOY. THE CONSUMER WAS INJURED." (04/11/2003)

- "THE VEHICLE WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAG FAILED TO DEPLOY." (02/16/2003)

- "AIR BAGS FAILED TO DEPLOY FROM FRONTAL IMPACT DURING MOTOR VEHICLE ACCIDENT." (01/26/2003)

- "WHILE DRIVING AT 75 MPH, VEHICLE'S AIRBAG FAILED TO DEPLOY AND OR TO RECORD ANY INFORMATION. DEALER NOTIFIED…" (12/10/2002)

- "VEHICLE WAS IN A FRONT COLLISON AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. NONE OF THE OCCUPANTS IN THE VEHICLE WERE SERIOUSLY INJURED AT TIME OF THE ACCIDENT. . ." (11/06/2002)

- "CONSUMER WAS TRAVELING AROUND A CURVE, CONSUMER SUDDENLY LOST CONTROL OF VEHICLE. CONSUMER STATES VEHICLE SLAMMED INTO A TREE AND NONE OF THE AIRBAGS

DEPLOYED. . .” (09/28/2002)

- “VEHICLE INVOLVED WAS IN A FRONTAL COLLISION WITH A TREE, UPON IMPACT AIR BAGS DID NOT DEPLOY. VEHICLE WAS TRAVELING APPROXIMATELY 40 MPH. CONSUMER STATED THE ROAD WAS UNEVEN AND THE RIGHT SIDE TIRES WAS CAUGHT IN A WASHOUT, CONSUMER TRIED TO BRING THE TIRES BACK ON THE ROAD BUT OVERCORRECTED, THE VEHICLE THEN BEGAN TO FISHTAIL AFTER COMING BACK ON THE ROAD, SLID ACORSS THE HIGHWAY AND HIT A TREE, THE DRIVER SUFFERED INJURIES.” (08/25/2002)

- “THE 2000 CHEVROLET SILVERADO CRASHED HEAD ON INTO A TREE, THE AIRBAGS DID NOT DEPLOY. THE DRIVER . . . HAD NUMEROUS FACIAL FRACTURES CAUSED WHEN HIS HEAD HIT AND CRACKED THE WINDSHIELD. HE WAS HOSPITALIZED FOR 5 DAYS AND IS STILL UNDER A DOCTOR’S CARE.” (08/22/2002)

- “IN A FRONTAL COLLISION, VEHICLE ROLLED 4 TIMES. UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED.” (08/04/2002)

- “WHILE TRAVELING AT 55 MPH LOST CONTROL OF VEHICLE AND HIT A CONCRETE DIVIDER, VEHICLE WAS AIRBORNE AND LANDED ON DRIVER'S SIDE. NONE OF THE

- AIRBAGS DEPLOYED, AND CONSUMER SUSTAINED LEG INJURY. . .” (08/01/2002)

- “WHILE DRIVING WAS HIT HEAD-ON BY ANOTHER VEHICLE AND BOTH DRIVER AND PASSENGERS AIRBAGS DID NOT DEPLOY. CONSUMER WAS DRIVING APPROXIMATELY 30 MPH, AND THE OTHER VEHICLE WAS DRIVING APPROXIMATELY 40-50 MPH. THERE WERE 2 INJURIES.” (07/03/2002)

- “CONSUMER STATED VEHICLE WAS INVOLVED IN A FRONTAL CRASH OF 30 MPH, AND THE AIR BAGS DID NOT DEPLOY, DEALER DID NOT CHECK VEHICLE, BECAUSE GM WOULD NOT GIVE THEM PERMISSION.” (12/18/2001)

- “WHILE DRIVING, VEHICLE WAS INVOLVED IN AN ACCIDENT. UPON IMPACT, AIR BAG ON DRIVER/PASSENGER SIDE DID NOT DEPLOY, DRIVER WAS INJURED.” (12/11/2001)

- “HEAD COLLISION AT 60-65 MPH, AND AIR BAGS DID NOT DEPLOY. THERE WAS NO PRIOR WARNING. CONTACTED MANUFACTURER, AND

MANUFACTURER WAS NOT WILLING TO DO ANYTHING." (06/28/2001)

- WHILE DRIVING 30 TO 35 MPH HAD A CRASH, AND AIRBAGS DID NOT DEPLOY. DAMAGED FRONT END OF TRUCK. CONTACTED DEALER." (06/25/2001)

- "WHILE TRAVELING AT APPROXIMATELY 45 TO 50 MPH VEHICLE IMPACTED ANOTHER VEHICLE, CAUSING $11,000 WORTH OF DAMAGE TO FRONT OF TRUCK. UPON IMPACT, DRIVER'S AIR BAG FAILED TO DEPLOY WHILE PASSENGER'S AIR BAG WAS TURNED OFF. . . DRIVER EXPERIENCED NECK INJURIES AND STIFF NECK." (06/13/2001)

- "VEHICLE WAS GOING 65MPH. CONSUMER WAS TRYING TO BRAKE TO SLOWDOWN, AND IT WOULDN'T SLOW DOWN. EACH TIME CONSUMER'S FOOT CAME OFF BRAKE, VEHICLE SPED UP. CONSUMER PULLED OFF ROAD, AND COULDN'T TAKE IT OUT OF DRIVE. VEHICLE RAN INTO SOME GRAVEL, AND THE SPUN BACK END AROUND. VEHICLE WENT OVER A 100FT. RAVINE, TAKING OUT 2 TREES, AND LANDING ON SOME ROCKS. UPON IMPACT, AIR BAGS NEVER DEPLOYED. . ." (06/11/2001)

- "WAS TRAVELING 60MPH AND LOST CONTROL OF VEHICLE DUE TO ITS DRIFTING. IT WENT SIDEWAYS AND OFF THE ROAD. THEN, VEHICLE WENT AIR BORNE AFTER STRADDLING. DRIVEWAY WAS OF CONCRETE TILE. LANDED ON BUMPER, THEN FLIPPED ON TOP. AIR BAGS FAILED TO DEPLOY. DRIVER SUFFERED INJURIES AND WAS HOSPITALIZED." (04/23/2001)

- "VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH GUARDRAIL AND SEVERAL OF ITS SUPPORT POLES AT 80 MPH. UPON IMPACT, BOTH AIR BAGS DID NOT DEPLOY. CONSUMER STATES IMPACT WAS 85 MPH AND ACCELERATING, CONSUMER HIT A GUARDRAIL AND EIGHT OF ITS SUPPORT POSTS, FINALLY STOPPING WHEN CONSUMER IMPACTED AN OVER PASS SUPPORT." (04/08/2001)

- "CONSUMER WAS TRAVELING AT APPROXIMATELY 60 MPH WHEN A TRAFFIC JAM AHEAD OF HIM OCCURRED. CONSUMER APPLIED BRAKES AND ATTEMPTED TO SLOW DOWN. BRAKES FAILED TO SLOW VEHICLE DOWN, AND REAR ENDED A VEHICLE IN FRONT OF HIM ON FRONT DRIVERS SIDE OF VEHICLE. BOTH FRONTAL AIRBAGS FAILED TO DEPLOY. . ." (04/08/2001)

- "HIT A GUARD RAIL HEAD ON, WENT OVER IT AND NOSE DIVED INTO A 10FT. DEEP DITCH, FLIPPING ONTO THE ROOF. NEITHER AIRBAG

DEPLOYED AFTER HITTING THE FRONT END TWICE." (01/02/2001)

- "DRIVER HAD LOST CONTROL OF VEHICLE HIT A TELEPHONE POLE HEAD-ON WITH A 50-65 MPH IMPACT, AND THEN DROVE INTO A FIELD. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, BUT SEATBELTS WERE ON AT THE TIME. AS A RESULT, PASSENGER HAD CRACKED STERNUM, AND DRIVER HAD MILD WHIPLASH…" (09/08/2000)

- "VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A TREE AT 20 MPH, AND BOTH AIR BAGS DID NOT DEPLOY. DEALER/MANUFACTURER WERE NOT NOTIFIED AT THIS TIME. . ." (04/29/2000)

- "HEADING SOUTH ON HIGHWAY US 1, TRAVELING 55MPH WITH CRUISE CONTROL ON, ANOTHER VEHICLE COMING NORTH TURNED IN FRONT, AND CONSUMER HIT VEHICLE ON THE SIDE. UPON IMPACT, DRIVER'S SIDE AIRBAG DID NOT DEPLOY. CONTACTED DEALER, AND HE WAS NOT ABLE TO HELP." (01/19/2000)

- "A CAR ATTEMPTED TO TURN IN FRONT OF US, HE DID NOT MAKE IT. WE WERE TRAVELING BETWEEN 38-40 MPH WHEN WE HIT THE OTHER VEHICLE HEAD ON. AIRBAGS DID NOT DEPLOY ON EITHER SIDE OF THE VEHICLE. THE TRUCK WAS TOTAL LOSS…" (10/23/1999)

- "UPON A FRONTAL IMPACT AT ESTIMATED SPEED OF 55 MPH, NEITHER DUAL AIR BAG DEPLOYED. CHEVROLET TOLD CONSUMER THAT AIR BAGS DEPLOY IN CERTAIN SITUATIONS. OWNER HAS RECEIVED A RECALL NOTICE FOR AIR BAGS."

- "CONSUMER STATES THAT AIRBAGS DID NOT DEPLOY DURING ACCIDENT IN A 2000 CHEVROLET SILVERADO CAUSING SERIOUS INJURY."

- "AIR BAGS FAILED TO DEPLOY IN A COLLISION, RESULTING IN A FATALITY."

- "WHILE TRAVELING AT SPEED 45 MPH WHEN REAR ENDED ANOTHER VEHICLE. UPON IMPACT, DRIVER'S AIR BAG DID NOT DEPLOY."

- "AIR BAGS DID NOT DEPLOY ON RIGHT FRONT COLLISION WITH CONCRETE WALL. . ."

- "CONSUMER WAS INVOLVED IN 55 MPH FRONTAL COLLISION IN WHICH DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY.

ALSO, FRONT END WAS HEAVILY DAMAGED. . .”

- “AIR BAGS DID NOT DEPLOY WHEN VEHICLE STRUCK A TREE HEAD ON. VEHICLE WAS TRAVELING AT 40 MPH. DRIVER WAS INJURED.”

27.    New GM received customer complaints of airbag failures in front end collisions. Although Old GM issued a recall (N020029) on some 2000 Chevrolet Silverados in 2002, neither Old GM nor New GM ever issued a recall to Plaintiffs related to the failure of the airbags to deploy in a crash with frontal impact in his vehicle.

28.    Throughout the years in which it received these complaints, Old and New GM marketed GM brand vehicles as safe. For example, in a section called “Safety,” Old GM’s Chevrolet website stated:

> **OUR COMMITMENT**
>
> “Your family’s safety is important to us. Whether it’s a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That’s why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind.”

29.    Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, “Putting people first,” and, “Saturn. People First.” Saturn’s print ad campaign featured advertisements with statements such as the following: “Need is where you begin. In cars, it’s about things like reliability, durability and, of course, safety. That’s where we started when developing our new line of cars.” In sum, in order to increase sales, Old GM touted the safety of its vehicles, and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell “certified pre-owned cars” that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public,

explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

30.    Plaintiffs' 2000 Chevrolet Silverado was equipped with driver and front passenger frontal airbags.  However, these airbags did not deploy during the subject collision even though there was a frontal impact.  Plaintiff Mark Vega sustained a torn ACL and meniscus, as well as back injuries as a result. Plaintiff Mark Anthony Vega sustained back and neck injuries as a result.

31.    Plaintiffs' injuries were also caused by the failure of airbag to deploy in this collision.

32.    The defects in the design, manufacture and/or assembly of the 2000 Chevrolet Silverado's safety components and the negligence of GM as described herein, neither of the frontal airbags deployed.

33.    Prior to February 1, 2016, Old GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the Silverado, which contained design defects when it left the possession of Old GM.

34.    At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

35.    Notwithstanding this duty, GM carelessly, recklessly and negligently designed,

manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

36.     GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

37.     All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects:  (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would

expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

38.    Because of its defective design, manufacture and production, especially the airbag system/ passenger restraint system in the 2000 Chevrolet Silverado was inherently dangerous in the event of foreseeable frontal collisions.

39.    GM breached its duties owed to Plaintiffs in that it failed to recall and retrofit the 2000 Chevrolet Silverado involved in the incident in question.

40.    Plaintiffs were not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System/Passenger Restraint System.

## CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFFS UNDER TEXAS LAW

## COUNT 1 – Negligence

41.    The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

42.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order.  Thus, the duties

of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, certain Named Plaintiffs have claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiffs.

43.    Old GM and New GM owed Named Plaintiffs a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiffs.

44.    Old GM and New GM owed the Named Plaintiffs a duty to detect known safety defects in GM vehicles.

45.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect, including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

46.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

47.    Old GM and New GM knew that their customers, such as the Named Plaintiffs, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

48.    Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiffs and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM

had a responsibility to the Named Plaintiffs and other drivers to take the reasonable measures listed above.

49.     By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiffs were among the product liability of Old GM assumed by New GM.

50.     Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiffs by failing to provide appropriate notice of and repair procedures for the Named Plaintiffs' Defective Vehicle.  In doing so, New GM departed from the reasonable standard of care required of it.

51.     It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiffs and other drivers would be endangered.

52.     The Named Plaintiffs' injuries were reasonably foreseeable to Old GM and New GM.

53.     The Named Plaintiffs could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

54.     Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

55.     As will be shown at trial, all the foregoing knowledge of Old GM in all the

preceding paragraphs was inherited by or is imputable to New GM.

**COUNT II - Strict Liability (TX CPRC §82)**

56.     The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

57.     Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

58.     The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

59.     The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiffs.

60.     The defects set forth herein caused the Named Plaintiffs' injuries.

61.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiffs have claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiffs.

62.     These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which it is strictly liable to the Named Plaintiffs pursuant to Restatement (Second) of Torts § 402A.  Alternatively, the injuries and losses were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which New GM is

strictly liable to the Named Plaintiffs pursuant to Restatement (Second) of Torts § 402A because these product liabilities were assumed by New GM.

63.     These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the Plaintiffs.  Alternatively, these injuries were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which New GM is strictly liable to the Plaintiffs because these product liabilities were assumed by New GM.

64.     By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiffs were among the product liabilities of Old GM assumed by New GM.  Independent of any failures by Old GM as described herein, New GM breached its duties owed to the Named Plaintiffs as described herein.

65.     Plaintiffs would show in the alternative that there was a manufacturing defect in Plaintiffs' vehicle concerning the airbag system/passenger restraint system.

66.     As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Marketing Defect**

67.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase

Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System /Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. Further, Plaintiffs have claims for a post-sale accident involving a New GM vehicle that caused personal injury or property damage and New GM is therefore expressly liable to Plaintiffs for Old GM's negligence. New GM is also liable to Plaintiffs for its independent, post-sale negligence.

68.    Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiffs' vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiffs, the public, and NHTSA.

69.    In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

70.    Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning instructions. When Old GM learned that the Plaintiffs' vehicle was defective, it had a continuing

duty to warn Plaintiffs of the existence of the defect, including after the original sale of the vehicle.

71.     New GM was also negligent in providing warnings about Plaintiffs' vehicles and unreasonably concealing the design, manufacturing, and informational defects that New GM knew existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for safety-related defects and warn Plaintiffs, the public, and NHTSA about safety- related defects in Old GM vehicles.   This duty is based on the direct and continuing relationship between New GM and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn owners of Old GM vehicles, including Plaintiffs, of safety defects and did, in fact, warn owners of Old GM vehicles, including Plaintiffs, of the safety defects (though the warning arrived years later than it should have and unreasonably minimized the risk of harm.

72.     In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

73.     Thus, independent of any failures by Old GM and New GM as described herein, New GM breached its duties to Plaintiffs by failing to provide appropriate notice of and repair procedures for the Airbag System/Passenger Restraint System defects in Plaintiffs' vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

74.     Old GM's and New GM's negligence proximately caused the injuries and damages sustained by Plaintiffs, as set forth herein. New GM's negligence in manufacturing and selling a vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the statutes and regulations that required Old GM and New GM to recall Plaintiffs' vehicle for safety-

related defects proximately caused Plaintiffs' inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

75.    New GM is liable for compensatory damages based on Old GM's conduct and based on New GM's own independent conduct.  New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

76.    The Named Plaintiffs pray for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

77.    As a direct and proximate result of New GM's wrongful conduct, Plaintiffs have been (and continues to be) damaged in the form of: (a) past and future pain and suffering; (b) past and future physical impairment; (c) past and future physical disfigurement; (d) past and future mental anguish; (e) past and future loss of consortium and/or loss of services; (f) past and future loss of income and/or lost earning capacity; (g) past and future reasonable and necessary medical expenses; and (h) past and future loss of enjoyment of life' (i) loss of function; (j) prospective medical care and medication costs; and (k) property damage to his vehicle sustained in the crash.  All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

78.    Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be

determined).

**JURY DEMAND**

79.    The Named Plaintiffs request a trial by jury.

**PRAYER**

80.    For the foregoing reasons, the Named Plaintiffs pray that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiffs against Defendant for actual damages, as alleged, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiffs may be entitled at law or in equity.

Dated: April 30, 2018

RESPECTFULLY SUBMITTED,

*/s/ Craig W. Carlson*
Craig W. Carlson (State Bar No. 00792039)
THE CARLSON LAW FIRM PC
100 E Centex Expressway
Killeen, Texas 76542
Telephone: (254) 526-5688
Facsimile: (254) 526-8204
Email  ccarlson@carlsonattorneys.com

Mitchell A. Toups (TX Bar # 20151600)
WELLER, GREEN, TOUPS & TERRELL, LLP
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
Email:  matoups@wgttlaw.com

James R. Dugan, II
David Scalia
Lanson Bordelon
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

Gregory K. Evans (TX Bar  No. 24002065)
Law Offices of Gregory K. Evans, PLLC
3900 Essex, Suite 690
Houston, TX  77027
(713) 840-1299
Facsimile:  (281) 254-7886
Email:  greg@gevanslaw.com

***Attorneys for Plaintiffs***